Jesus **MORALES**, Appellant,

v.

Santa **MORALES**, Appellee.

No. 13–01–383–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Jan. 23, 2003.

---

Stephen T. Leas, McAllen, for appellant.

Luis Roberto Vera, Jr., Lyvonne Brittingham, San Antonio, for appellee.

Before Justices DORSEY, YAÑEZ, and CHAVEZ.[1]

## OPINION

Opinion by Justice YAÑEZ.

In this appeal, Jesus Morales challenges the trial court's judgment in his ex-wife's favor based on the jury's determination that the separation agreement signed by him and his ex-wife, Santa, is not enforceable. We affirm.

After forty-plus years of marriage, Santa filed for divorce in 1993. In July 1994, the parties went to mediation and decided to permanently separate instead of pursuing a divorce. Jesus and Santa signed a separation agreement that became effective on July 21, 1994. The agreement states that they will at all times live separately and apart as if they were unmarried. The agreement's stated purpose is to divide their property and provide for the custody and support of their only remaining minor child.

On July 8, 2001, Santa filed suit against Jesus for fraud and breach of contract regarding this agreement. She alleged that Jesus had misrepresented their marital assets, rendering their agreement unfair and unenforceable. The jury found the agreement not enforceable and awarded Santa $735,735, as well as pre- and post-judgment interest.

On appeal, Jesus raises six issues challenging the trial court's failure to enforce the agreement. By his first point of error, appellant contends the court erred in failing to make a finding as to whether the agreement was unconscionable as a matter of law under the family code.[2] Then, by

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 75.002 (Vernon 1998).

2. The trial court found that family code sec-

his fourth point of error, Jesus contends the trial court erred by "failing to submit a jury question on damages that is based on a legal theory of recovery." Regarding these two points, appellant has failed to preserve the alleged errors for our review.

■ As for appellant's complaint that the court failed to make a finding on unconscionability under the family code, the record must show that appellant made such a complaint to the trial court by a timely request, objection, or motion in order to preserve it for appellate review. Tex.R.App. P. 33.1(a)(1). The request, objection, or motion must have made the court aware of the complaint and complied with the rules of evidence and procedure. *Id.* at (A–B). The record must show that the court either expressly or implicitly ruled on the complaint or refused to rule. Tex.R.App. P. 33.1(a)(2). If the court refused to rule, the record must show that the complainant objected to the refusal. Tex.R.App. P. 33.1(a)(2)(B). Here, appellant never complained to the trial court about its failure to determine the unconscionability of the separation agreement. Therefore, appellant waives review of his first point of error.

■ In addition, appellant's complaint of charge error must comply with rules of civil procedure 271–279. Tex.R. Civ. P. 271–79; *Doe v. Mobile Video Tapes, Inc.,* 43 S.W.3d 40, 50 (Tex.App.-Corpus Christi 2001, no pet.). The complaining party must object to the submission of an erroneous question, instruction, or definition. Tex.R. Civ. P. 274. If the complaint concerns an omission, the party must request and tender a substantially correct instruction in writing. Tex.R. Civ. P. 278. If the court erroneously fails to include instruc-

tions on the proper measure of damages, it is the complaining party's burden both to object to the charge and to tender such instructions in substantially correct form. Tex.R. Civ. P. 278. "Any complaint as to a question, instruction, or definition, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." Tex.R. Civ. P. 274. Objections to the charge "shall in every instance be presented . . . before the charge is read to the jury." Tex.R. Civ. P. 272.

Appellant failed to complain before submission of the charge about the alleged charge error in the jury question. He did not object or make a request during the charge conference. He did not file written objections or written requests. Appellant complained of the jury question regarding damages in his motion for new trial, but he did not complain about the question before the court read the charge to the jury. Appellant does not direct this Court to any record establishing his timely objection. As such, appellant waives review of his fourth point of error.

■ By his sixth point of error, Jesus contends counsel for Santa committed reversible error by engaging in improper jury argument. Appellant has also waived this point. Appellant does nothing more than summarily state his point. He does not explain why or how counsel's argument is inflammatory or appeals to passion and prejudice. Appellant does not discuss the evidence or explain how counsel's arguments were outside its scope. He does not explain how the impropriety of the argument ran through its entirety and was cumulative. Appellant cites no authority

tion 4.105 (which states, "[a]n issue of unconscionability of a *partition or exchange* agreement shall be decided by the court as a matter of law") did not apply to the *separation* agree-

ment at issue in this case and, consequently, made no decision regarding unconscionability. Tex. Fam.Code Ann. § 4.105 (Vernon 1998) (emphasis added).

for his proposition that improper argument during rebuttal is incurable. An appellant who does nothing more than summarily state his point of error, without citation to legal authority or substantive analysis, has failed to preserve the argument for review. *Favaloro v. Comm'n for Lawyer Discipline*, 13 S.W.3d 831, 840 (Tex.App.-Dallas 2000, no pet.). Consequently, appellant waives review of his sixth point of error.

■ By his second and third points of error, Jesus contends there is no evidence or, at least, insufficient evidence to support the jury's determination and award. Appellant argues that the agreement's terms, specifically the distribution of community property and ten years of spousal support, are fair and equal. We disagree.

In reviewing a no evidence or legal insufficiency of the evidence point, we consider only the evidence that tends to support the jury's verdict and disregard all evidence and inferences to the contrary. *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 858 (Tex.App.-Corpus Christi 1998, pet. denied) (op. on reh'g) (citing *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989) (*per curiam*)). If there is some evidence, or more than a scintilla, supporting the jury's finding, the legal sufficiency challenge must fail. *Shiba*, 976 S.W.2d at 858. As for a review of factual sufficiency issues challenging a jury verdict, we consider and weigh all of the evidence, not just the evidence that supports the verdict. *Krishnan v. Ramirez*, 42 S.W.3d 205, 212 (Tex. App.-Corpus Christi 2001, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (*per curiam*)). We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Krishnan*, 42 S.W.3d at 212.

■ In Texas, when "a person [who] is under a duty to disclose material infor-

mation[ ] refrains from doing so, and thereby leads another to contract in reliance on a mistaken understanding of the facts, the resulting contract is subject to rescission due to the intentional nondisclosure." *Boyd v. Boyd*, 67 S.W.3d 398, 404–05 (Tex.App.-Fort Worth 2002, no pet.) (citing *Smith v. Nat'l Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex.1979)). "A duty to speak arises from a fiduciary or confidential relationship or where a person is 'by force of circumstances,' under a duty to speak." *Boyd*, 67 S.W.3d at 405 (quoting *A.R. Clark Inv. Co. v. Green*, 375 S.W.2d 425, 435 (Tex.1964); *Casa El Sol–Acapulco v. Fontenot*, 919 S.W.2d 709, 718 (Tex.App.-Houston [14th Dist.] 1996, writ dism'd by agr.)). The duty exists where the parties to a mediated settlement agreement have represented to one another that they have each disclosed the marital property known to them. *Boyd*, 67 S.W.3d at 405. Moreover, "when one voluntarily discloses information, he has a duty to disclose the whole truth rather than making a partial disclosure that conveys a false impression." *Boyd*, 67 S.W.3d at 405 (quoting *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App.-Fort Worth 1998, pet. denied)).

Here, the separation agreement states, in relevant part: "Each of us has provided fair and reasonable disclosure of that party's property and financial obligations to the other party." At trial, several documents were admitted into evidence by both parties to give the jury an idea of the state of appellant's finances at the time he and Santa agreed to sign the agreement. These documents included: appellant's corporate tax return, appellant's personal financial statement prepared for the U.S. Small Business Administration, an inventory and appraisement prepared by appellant for an earlier divorce suit that was dismissed in favor of the separation agree-

ment, and analyses of personal and corporate tax returns prepared by appellant. Santa argued that the discrepancies between the representations made by Jesus leading up to the separation agreement and the evidence submitted at trial regarding appellant's assets prove fraud and breach of contract.

After reviewing all of the evidence in both a neutral light and a light most favorable to the verdict, we hold that it was factually and legally sufficient to support both the jury's determination that the agreement was not enforceable and the award in Santa's favor. In short, based on the evidence regarding the financial discrepancies, the jury could conclude that Jesus misrepresented his assets, rendering the separation agreement unfair and unequal. Appellant's second and third points of error are overruled.

 By his fifth point of error, Jesus contends the trial court erred by failing to properly calculate prejudgment interest. The court's judgment awarded Santa prejudgment interest at ten percent, measured from July 21, 1994 (the effective date of the separation agreement). Appellant argues according to the finance code that: (1) the prejudgment interest rate should have been calculated at six percent, and (2) the interest should have commenced on the date the original suit was filed. We disagree.

 "We apply an abuse of discretion standard to review the trial court's award of prejudgment interest, giving limited deference to the lower court's application of the law to the facts." *Marsh v. Marsh*, 949 S.W.2d 734, 744 (Tex.App.-Houston [14th Dist.] 1997, no writ). "A trial court abuses its discretion when it acts without reference to any guiding rules or principles." *Id.*

 The finance code states:

## § 302.002. Accrual of Interest When no Rate Specified

If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year....

## § 304.104. Accrual of Prejudgment Interest

[P]rejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives *written notice of a claim* or on the date the suit is filed and ending on the day preceding the date judgment is rendered.

TEX. FIN.CODE ANN. §§ 302.002, 304.104 (Vernon 1998 and Supp.2002) (emphasis added). However, "[w]hen extrinsic evidence is needed to determine the amount of contract damages," article 302.002 does not apply. *Marsh*, 949 S.W.2d at 745 (referring to the article's predecessor statute). In these situations, a court can award prejudgment interest based on equity. *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930 (Tex.1988). In other words, when damages are not ascertainable from the face of the contract, a trial court may award ten percent prejudgment interest. *Marsh*, 949 S.W.2d at 744 (citing *Olcott*, 744 S.W.2d at 930–31).

This is the situation here. The jury awarded damages based on trial evidence and not the separation agreement because the agreement was found to be unfair and thus unenforceable. Since extrinsic evidence was needed to determine Santa's damages, the finance code does not apply. *Id.* at 745. Accordingly, the court did not abuse its discretion by awarding prejudgment interest at a rate of ten percent. *Id.*

Regarding the accrual date, the prejudgment interest statute does not set forth

requirements for what constitutes a defendant's receipt of adequate written notice of a claim. *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex.App.-Austin 1995, writ denied). It is important to note that this statute is construed liberally to achieve its purposes of fully compensating the plaintiff and encouraging settlements. *Id.* at 529. The Texas Supreme Court has further explained that "the starting date for accrual of prejudgment interest ... [is] 'six months after the occurrence of the incident giving rise to the cause of action.'" *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 529 (Tex.1998) (quoting *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985)).[3]

Here, there are arguably two incidents (the 1993 divorce suit and the 1994 separation agreement) giving rise to the original cause of action (the 2001 breach of contract and fraud suit). It is undisputed that Santa filed for divorce in 1993 and, after mediation, the parties agreed to the separation agreement, which took effect on July 21, 1994. Considering the liberal construction of the "written notice of a claim" requirement and the statement in *Kenneco Energy*, we conclude that the trial court did not abuse its discretion by deciding to calculate prejudgment interest from the date of the agreement (and not the date the underlying suit here was filed, as appellant argues) because the divorce suit Santa filed in 1993 gave Jesus written notice of her claim to a portion of their marital assets. The date of the agreement (July 21, 1994), which is the date from which the interest was measured, is at least six months, or 180 days, after the 1993 divorce suit was filed. Thus, measurement of prejudgment interest from

that date is consistent with the statutory requirement (180 days after written notice of a claim) and the case law (six months after the incident giving rise to the original cause of action). Tex. Fin.Code Ann. § 304.104 (Vernon 1998 and Supp.2002); *Kenneco Energy*, 962 S.W.2d at 529. Consequently, the judge's decision to calculate prejudgment interest from July 21, 1994, the date the separation agreement took effect, was not error.

It was within the trial court's discretion to calculate prejudgment interest at ten percent, dating back to July 21, 1994. Appellant's fifth point of error is overruled.

We have considered all of appellant's arguments, and they are all waived or overruled. The trial court's judgment is affirmed.

---

**3.** "*Cavnar* involved claims for personal injury, but its application has been expanded to non-personal injury scenarios." *Johnson & Hig-* gins *of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 529 (Tex.1998).